**STATE BOARD OF REGISTRATION FOR the HEALING ARTS, Respondent,**

v.

**Luther A. MASTERS, D.O., Appellant.**

**No. KCD 26200.**

Missouri Court of Appeals,
Kansas City District.

July 9, 1974.

Thomas D. Graham, Jefferson City, for appellant; Graham & Hawkins, Jefferson City, James E. Spain, Briney, Welborn & Spain, Bloomfield, of counsel.

John C. Danforth, Jefferson City, Atty. Gen. of Missouri, Albert J. Stephan, Jr., St. Louis, for respondent.

WILLIAM J. MARSH, Special Judge.

Luther A. Masters, an osteopathic physician, appeals from the judgment of the circuit court of Cole County reversing the decision of the Administrative Hearing Commission which ordered the State Board of Registration for the Healing Arts to "issue a license to Dr. Masters and to renew Dr.

Masters' annual registration certificate forthwith upon receipt of the proper renewal fee" and which further ordered the Board not to take action to revoke probation previously granted appellant by the Board without first affording appellant a full evidentiary hearing and the right to have his attorney cross-examine adverse witnesses and to call witnesses in his own behalf, within the remaining period of probation. We have jurisdiction. Mo.Const. Art. V, § 3, V.A.M.S.; § 536.140 (all statutory references are to RSMo 1969, unless otherwise indicated); Bittiker v. State Board of Registration for Healing Arts, 404 S.W.2d 402, 404 [1] (Mo.App.1966).

A chronology of the actions by and involving appellant, respondent (hereinafter referred to as Board), the Administrative Hearing Commission (hereinafter referred to as Commission) and the trial court is reasonably necessary for a comprehension of the issues thus presented and our decision here.

At the time of the first action hereinafter described, appellant was licensed by and registered with the Board as a physician and surgeon in accordance with Chapter 334, RSMo. On December 8, 1969, following a hearing had before it on February 26 and 27, 1969, at which appellant appeared personally and by attorney, the Commission found, concluded and decided that appellant was guilty of unprofessional and dishonorable conduct when, in a period from September 29, 1967 through May 20, 1968, appellant rendered professional treatment on eight separate occasions to three separate patients while he was under the influence of drugs and his faculties were thereby impaired and when he unlawfully carried a concealed weapon (a pistol) upon or about his person on two separate occasions. The acting Hearing Commissioner was of the opinion that appellant was capable of rehabilitation and recommended that the Board place appellant on probation upon such terms and conditions as the Board determined appropriate and conducive to appellant's rehabilitation. This action was originally commenced upon complaint filed with the Commission under the style and number of State Board of Registration for the Healing Arts v. Luther A. Masters, D. O., Cause No. 68019.

The Board held a hearing in this cause on January 17, 1970 to determine the issue of what disciplinary action or measure was appropriate in this case. Appellant appeared personally and by attorney at this hearing. On January 23, 1970, the Board issued its order which revoked appellant's license, stayed execution of the order of revocation and placed appellant on probation for a period of five years on the following terms and conditions:

1. That respondent shall obey the laws of the State of Missouri, the United States, the several states and all political subdivisions thereof.

2. That respondent shall obey all laws and regulations promulgated by duly constituted authority relating to the practice of the healing arts and conduct himself at all times as an honorable practitioner of his profession.

3. That, during the period of probation hereby ordered, respondent shall not take, ingest, nor administer to himself any legend drug or medication except upon prescription or written order of another duly licensed physician. The term "legend drug or medication" as used herein shall mean drugs available to the general public only upon prescription of a licensed physician.

4. That, during the period of probation hereby ordered and commencing with July of 1970, respondent shall apply in writing during the months of July and January of each year to the Executive Secretary of the Board to appear before the Board, present himself at such meeting or at any other time to be examined upon his qualifications other than academic to continue in the practice of the healing arts.

5. That respondent shall within thirty (30) days of the date hereof acknowledge in writing that he understands and accepts all of the foregoing terms and conditions and that upon breach of any such terms and conditions, the probation hereby granted may be withdrawn after notice to respondent and respondent's failure to show cause why such action should not be taken.

6. That if respondent shall fulfill all terms and conditions of this probation, the Board will entertain an application filed after the expiration of the period of probation hereby ordered to restore respondent to permanent and unconditional licensure.

On February 18, 1970, appellant acknowledged under oath that he received the order of the Board and understood and accepted, without reservation, each and every condition thereof and that he understood that his failure to comply fully with each of the terms and the conditions of his probation may result in the withdrawal of his probation and execution of the order of revocation of his license. No petition for judicial review of the decision of the Commission or of the disciplinary order of the Board was filed in any circuit court having jurisdiction within thirty days after January 23, 1970.

On or about May 29, 1971, appellant mailed the Board his application for annual registration for the fiscal year July 1, 1971 to June 30, 1972, on a form provided by the Board, together with a money order for the statutory ten dollars fee. The Board did not accept appellant's application and money order nor did it issue a certificate of registration for the forthcoming year for reasons which will become readily apparent.

On or about June 3, 1971, in Cause No. 68019, the Board issued, and appellant received, its order to appellant to show cause why appellant's probation should not be withdrawn and its January 23, 1970 order revoking appellant's license be executed.

The order set out the first two numbered conditions of appellant's probation and alleged that "Whereas, the State Board of Registration for the Healing Arts has been informed that on July 12, 1970, respondent at Senath, Dunklin County, Missouri, did unlawfully sell a quantity of potent drugs, to-wit, 180 amphetamine capsules to Leon Phillips without legitimate medical need therefor and after having been advised that said capsules were being purchased by the said Leon Phillips for resale, * * *." It later appeared that the Board did not become aware of the basis for its allegations until some time in April 1971.

On June 26, 1971, in Cause No. 68019, the Board conducted a hearing on its show cause order at the time and place it stated. Appellant appeared in person but without an attorney. Very early in the proceedings, appellant stated he was acting as his own attorney.

At this hearing, Leon Phillips was identified as a special agent for the Federal Bureau of Narcotics and Dangerous Drugs. His testimony and evidence was essentially to the effect that sometime prior to July 12, 1970, his agency had received information that appellant was selling various amphetamines for non-medical use; that on July 12, 1970 he, another agent and an informant went to appellant's office at Senath and that he and informant entered appellant's office where they waited to see appellant; that upon Phillips and the informant being admitted in the appellant's private office, Phillips and appellant entered into a discussion in which the subject matter was "pills"; that Phillips informed appellant he was not taking pills but wanted them to sell and suggested appellant write five prescriptions for pills under forged names; that appellant refused this procedure but gave Phillips a physical, although Phillips said there was nothing wrong with him and suggested he give Phillips a prescription for Phillips' wife; that Phillips' wife was not present and that she was not nor had she ever been a patient of appellant; that appellant wrote

Phillips' name and address and the results of his physical examination and that Phillips' wife was in good health but suffered from chronic fatigue on a patient's record card, and at the conclusion of the transaction, appellant dispensed Phillips and the informant a quantity of capsules and tablets from appellant's dispensary and that Phillips paid appellant for his and the informant's physical examinations and capsules and tablets. Phillips testified that he sent the capsules to "our lab in Chicago, Illinois" and that the contents of the capsules included amphetamine and drugs in the barbiturate family.

Appellant stated that he had an attorney whom he had tried to call the night before this hearing and again on the morning of the hearing. He stated that he had consulted with an attorney and that he was testifying against that attorney's advice " * * * because I absolutely am sure that I have no difficulty in proving the testimony this agent gave is in error."

Appellant was asked if he would like to examine Phillips. He responded affirmatively and stated that he had Phillips' (patient) record. He then stated that he would have to ask for an attorney "with such testimony as this from a federal agent." He then again stated that he had an attorney who was supposed to have been at the hearing, and declined to direct any questions to Phillips when asked if he had any.

Appellant stated, "I have other witnesses here who will repudiate this man's testimony." However, no other such witnesses testified at this hearing. Appellant was then placed under oath, without objection, and testified that he saw Phillips on July 12, 1970 and produced Phillips' patient card upon which appellant had written entries of record on that occasion. Referring to this record, appellant testified that he dispensed 120 pills and capsules to Phillips for his use and 30 pills to Phillips for Mrs. Phillips. He testified that these drugs contained amphetamines and that the capsules contained amphetamine, amobarbital,

thyroid and homatropine. Appellant produced the bottles from which he had dispensed the capsules and pills to Phillips, which were marked and received into evidence, as was Phillips' patient card.

On June 29, 1971, the Board issued its amended order in which it stated that it found that appellant violated the terms and conditions of the probation granted by the January 23, 1970 order in that on July 12, 1970 appellant unlawfully sold "a quantity of potent drugs, to wit: amphetamine pills and capsules, aggregating approximately 150 in number to one Leon Phillips without legitimate medical need therefor, and not as part of bona fide professional treatment, and after having been advised that said pills and capsules were being purchased by the said Leon Phillips for resale," and ordered that the probation granted appellant be withdrawn and terminated and that its January 23, 1970 order revoking appellant's license be reinstated as of June 29, 1971. On the same date, appellant filed a motion for rehearing and for leave to present additional evidence. The Board, through its executive secretary, acknowledged its receipt, advised appellant that it had no authority to entertain such a motion, returned appellant's money order and again advised appellant that reinstatement of its order of revocation was then in effect.

On July 27, 1971, the appellant filed a complaint with the Administrative Hearing Commission under the style of Luther Andrew Masters, D.O. v. State Board of Registration for the Healing Arts, No. 71019. He alleged, inter alia, that the Board's action in withdrawing and terminating his probation and reinstating its order revoking appellant's license and refusing to "renew" his license was in excess of the Board's statutory authority and was, generally, in violation of the constitutions of the United States and Missouri. The complaint prayed that the Commission direct the Board to stay its probation revocation order, order the Board to "renew" appellant's license, conduct a hearing on the Board's refusal to "renew" appellant's li-

cense and prayed that the Commission conduct a hearing upon the "attempted" revocation and termination of appellant's probation by the Board.

On the same date, appellant also filed a two-count first amended petition in the circuit court of Cole County, No. 25435. The pleadings in this case are not a part of the record of this appeal. However, it becomes apparent from the record that Count I of this petition alleged the Board's termination of appellant's probation and reinstatement of its June 23, 1970 order revoking plaintiff's license, the absence of the Board's authority to do so without first filing its complaint before the Administrative Hearing Commission and prayed, in the alternative, for a stay order or temporary restraining order and temporary injunction pending a hearing; and thereafter a mandatory injunction to require the Board to renew his license, and an injunction prohibiting the Board from revoking appellant's probation or from initiating further proceedings against him. Count II of this amended petition was apparently filed as a notice of appeal from the Board's action of June 29, 1971 and apparently prayed the court to review that order and the original decision of the Commission in Cause No. 68019. Count II also apparently alleged that appellant had filed a "petition" with the Commission complaining of the failure of the Board to renew his license and also sought a stay order pursuant to § 536.120.

Commission Cause No. 71019 was continued at the request of the Board pending a determination of Cause No. 25435 in the circuit court of Cole County.

On October 8, 1971, the circuit court entered its judgment and order, which is a part of the record on this appeal, in Cause No. 25435 finding the issues on the record in favor of the defendants (respondent and its members and executive secretary) and against appellant on Count I of appellant's first amended petition and dismissed "the petition"; on Count II of appellant's first amended petition, the court found the issues against appellant, on the record, but further found that the matter therein stated was still pending before the Commission and that, therefore, the "petition" was premature and dismissed.

It does not affirmatively appear that appellant sought any relief from the October 8, 1971 judgment of the circuit court in its Cause No. 25435.

On October 18, 1971, the Commission conducted a hearing in its Cause No. 71019 (upon appellant's complaint). Leon Phillips did not appear or testify at this hearing. The Board's executive secretary (the only witness to testify at this hearing) testified that the Board did not renew appellant's annual registration prior to June 29, 1971 because it had been "flagged", as appellant was on probation and because the Board was having a hearing on June 26, 1971 to determine whether or not the probation would be revoked, and because the Board had not yet had an opportunity to process the application for annual registration before that date; that on June 29, 1971, the Board's order of revocation became effective and that, thereafter, the Board did not "renew" appellant's annual certificate of registration because he did not have a license. Appellant did not testify at this hearing. Prior to the commencement of this hearing, the Board unsuccessfully moved to dismiss Cause No. 71019 for the reason that the Commission was without jurisdiction to review disciplinary action taken by the Board against a licensee after a finding by the Commission that such licensee is guilty of any cause charged by the complaint for which the license may be revoked or suspended.

Marked and included as exhibits and as part of the record made at the October 18, 1971 hearing (and record on appeal here) were the October 8, 1971 judgment and order of the circuit court in its Cause No. 25435; findings of fact, conclusions of law and decision of the Commission in its Cause No. 68019; order of the Board dat-

ed January 23, 1970 incorporating appellant's acknowledgment thereof, in Cause No. 68019; the Board's June 29, 1971 letter to appellant; the Board's June 29, 1971 amended order (terminating appellant's probation and reinstating the Board's January 23, 1970 order revoking his license); the record of the proceedings filed in the circuit court in its Cause No. 25435 including a transcript of the hearing had before the Board on June 26, 1971 and the exhibits received in that hearing and including the decision of the Commission and notices and orders of the Board dated, respectively, December 8, 1969, January 23, 1970 and June 3, 1971.

On December 17, 1971, the Commission found, concluded and decided that it had jurisdiction to hear Cause No. 71019 pursuant to § 161.302. It further found that the Commission was not authorized to determine the question whether appellant violated the terms of his probation, but that the Commission was authorized to determine whether the Board followed proper procedure in guaranteeing appellant a full and fair evidentiary hearing before terminating his license to practice medicine. The Commission concluded that the Board did not give appellant a fair hearing on the grounds that he was not afforded the right to have counsel present at the hearing and the Board did not continue the hearing to a later date to afford appellant's attorney to call witnesses in his behalf and to cross-examine the federal agent who testified against him. The Commission decided that the refusal to renew appellant's annual registration and the termination of his license had no basis in law, and ordered the Board to issue a license to appellant and to renew appellant's annual registration certificate forthwith upon receipt of the proper renewal fee.

Thereafter, the Board filed a timely petition for review in the circuit court of Cole County in Cause No. 25656 and on December 22, 1971, filed a motion for stay of decision and order of the Administrative Hearing Commission. On April 15, 1972 that court entered its judgment and order reversing the decision of the Administrative Hearing Commission in Cause No. 71019. It is from this judgment that appellant appeals here, seeking a reversal of that judgment of the circuit court in Cause No. 25656.

The hearings conducted in both causes before the Commission Nos. 68019 and 71019 were initiated and prosecuted pursuant to provisions of the Administrative Hearing Commission Act, § 161.252 et seq., Laws 1965, effective October 13, 1965. Section 161.272 requires the Administrative Hearing Commission to conduct hearings and make findings of fact and conclusions of law in those cases wherein, under the law, a license issued by the State Board of Registration for the Healing Arts "may be revoked or suspended or wherein the licensee may be placed on probation", or wherein the Board refuses to permit an applicant to be examined upon his qualifications or refuses to issue or renew a license of an applicant who has passed an examination for licensure or who possesses the qualifications for licensure without examination. Section 161.332 provides that all final decisions of the Commission shall be subject to judicial review as provided in and subject to the provisions of §§ 536.100 to 536.140. Hence, our duty, and the circuit court's duty in the first instance, is to determine whether the decision of the Administrative Hearing Commission is supported by competent and substantial evidence upon the whole record and is authorized by law. Mo.Const. Art. V § 22. Thus, where an administrative decision resolves issues of fact, a reviewing court is not authorized to substitute its own judgment for the judgment of the administrative agency upon its findings of fact if such findings are supported by competent and substantial evidence, but is authorized to set aside an administrative agency's decision only where its findings of fact and decision based thereon are clearly contrary to the overwhelming weight of the evidence viewed in their entirety, together with all legitimate

inferences which may be reasonably drawn from that evidence, and in the light most favorable to the findings of fact and decision of the administrative agency based thereon. On the other hand, where an administrative decision is clearly based upon the agency's interpretation or application of the law, the administrative conclusions of law and decision based thereon are matters for the independent judgment of the reviewing court, and correction where erroneous. Mo.Const. Art. V § 22; § 536.-140; Bridges v. State Board of Registration for Healing Arts, 419 S.W.2d 278, 283 [11] (Mo.App.1967); Bittiker v. State Board of Registration for Healing Arts, supra, l. c. 404 S.W.2d 404; Gaddy v. State Board of Registration for Healing Arts, 397 S.W.2d 347, 349 [2] (Mo.App. 1965); Gordon v. Puritan Chemical Company, 406 S.W.2d 822, 825 [2, 3] (Mo.App. 1966). All of these principles may become applicable where administrative decisions include both findings of fact and conclusions of law, as is ordinarily the case.

■ This matter is not without difficulty in light of the events that transpired below. It appears that the record reviewed by the circuit court in its Cause No. 25435 included a stipulation by appellant and respondent described by the court as "severely limiting the matters which this court shall consider for judicial review." By their stipulation, appellant and respondent specifically excluded the transcript of the testimony and evidence given in the original hearing had before the Commission in its Cause No. 68019 on February 26 and 27, 1969. It appears that the transcript of the testimony and evidence given in the June 26, 1971 hearing before the Board on the issues of appellant's alleged probation violation was a part of the record reviewed by the circuit court in its Cause No. 25435. The trial court was authorized, as are we, to accept the parties' stipulation and record of facts as sufficient for judicial review of an administrative agency decision. § 536.-130; Rule 100.06, V.A.M.R.; Mitchem v.

Perry, 390 S.W.2d 600, 602 [1] (Mo.App. 1965).

In its conclusions of law upon which it based its October 8, 1971 judgment and order in its Cause No. 25435, the court concluded that the Board followed the procedure outlined in §§ 161.282 and 161.292, and that "There is nothing in the statutes which would require the (Board) to go back to the Hearing Commission and have another hearing on its right to terminate the probation granted to the plaintiff.", and that "When the Board terminated the probation and revoked the application for (appellant's) annual registration, the initiative for review before the Administrative Hearing Commission passed to the (appellant).", citing § 161.302, and found that Count II of appellant's petition alleged that appellant had filed a complaint pursuant thereto and that such a complaint was then pending before the Administrative Hearing Commission. It is apparent that the complaint referred to in the court's conclusions and that complaint No. 71019 in the Administrative Hearing Commission are and were one and the same.

■ Section 161.292 provides that upon a finding by the Commission that cause exists to suspend or revoke a license or to place the licensee on probation, the Board shall set the matter for hearing upon the issue of appropriate disciplinary action within thirty days after receipt of the Commission's finding of fact and conclusions of law, unless the Board and its licensee waive such hearing where the Commission has made recommendations as to appropriate disciplinary action, in which event the recommendations of the Commission become the disciplinary order of the Board. Absent such a waiver and in the event of a hearing upon the issue of appropriate disciplinary action, the licensee may appear with counsel and the Board may receive evidence relevant to the issue of appropriate disciplinary action from the licensee or any other source. After such a hearing, the Board may then order any dis-

ciplinary measure authorized by law which the Board deems appropriate. Under § 161.332, when such a disciplinary order may be entered by the Board, the decision of the Commission does not become final until the disciplinary order of the Board is entered. For purposes of judicial review as provided by § 161.332, the action (decision) of the Commission and such a disciplinary order of the Board are treated as one decision and as the final decision of the Commission subject to judicial review as provided in and subject to the provisions of §§ 536.100 through 536.140. Thus, in those cases to which § 161.252 et seq. apply, the reviewing court may review either the decision of the Commission or the disciplinary order of the agency, or both, where such review is properly sought, as the final decision.

■ Section 536.110 provides that a petition for judicial review of a final administrative decision may be filed in the circuit court or court of common pleas of proper venue within thirty days after the mailing or . delivery of the notice of the agency's final decision. In this case, where the Board conducted a hearing on the issue of appropriate disciplinary action and entered its disciplinary order accordingly, the disciplinary order of the Board dated and entered on January 23, 1970 and the decision of the Commission dated and entered December 8, 1969 became the final decision of the Commission for purposes of judicial review on January 23, 1970. However, no petition for judicial review of this final decision was filed in any circuit court or court of common pleas of proper venue within thirty days after January 23, 1970. Therefore, we believe that in this case the circuit court of Cole County was without jurisdiction to review either the December 8, 1969 decision of the Commission as prayed by appellant in Count II of his petition filed in that court on July 27, 1971 in its Cause No. 25435, or the disciplinary order of the Board entered in Cause No. 68019 on January 23, 1970, State ex rel. Burns v. Stanton, 311 S.W.2d 137, 140 [2]

(Mo.App.1958); and that the decision and order became final and are final determinations of those matters and these parties' rights in connection therewith and are not subject to any judicial review. That portion of Count II of appellant's petition filed in the circuit court on July 27, 1971, No. 25435, seeking judicial review of the decision of the Commission which became final on January 23, 1970 did not state facts upon which a claim for relief could have been granted by any reviewing court. Mo.Const. Art. V § 22; § 161.332; § 536.-110, subd. 1; Rule 100.04; and see State ex rel. Burns v. Stanton, supra.

■ Count I of appellant's July 27, 1971 petition No. 25435 for judicial review in the circuit court alleged the absence of the Board's authority to terminate appellant's probation and to reinstate its June 23, 1970 order revoking his license by its order dated June 29, 1971 following the hearing had on June 26, 1971 without having first filed its complaint before the Administrative Hearing Commission. On the record reviewed, the circuit court, by its judgment made and entered October 8, 1971, found that issue against appellant and in favor of the Board and dismissed Count I of appellant's petition. The effect of the court's judgment was to affirm the June 29, 1971 order of the Board although the court recited its action as a dismissal of Count I of appellant's petition. Graves v. O. F. Elliott, Inc., 355 Mo. 751, 197 S.W.2d 977, 979 [1]. We believe that it became incumbent upon appellant to take such steps and to commence such procedures as are and were necessary to seek and obtain timely appellate review of that judgment and to properly preserve that issue disposed of by that judgment for timely appellate review. Appellant did not do so and it may be considered that the October 8, 1971 judgment of the circuit court dismissing Count I of plaintiff's petition for review is the final judgment, dispositive of that issue as it arises out of the facts of this case and of appellant's search for review here. § 512.-020; § 512.050; § 536.140, subd. 6; Rule

81.01 et seq. (formerly Rule 82); Graves v. O. F. Elliott, Inc., supra. While we are not required to decide these issues, we mention them as illustrative of the consequences of procedural delinquencies and the difficulties attendant this review.

Because of all these circumstances, including the effect on appellant's license and the absence of some definitive precedents, we deem it unwise to rest our decision upon procedural irregularities. Further, we note that the October 8, 1971 judgment of the circuit court in its Cause No. 25435 dismissed Count II of appellant's petition (which included a prayer for review of the June 29, 1971 order of the Board) as premature for the reason that that was a matter pending before the Administrative Hearing Commission (in its Cause No. 71019), and we further note that the Hearing Commissioner took notice of the court's judgment and that both he and appellant's counsel interpreted that part of the judgment to permit an Administrative Hearing Commission review of the June 26, 1971 hearing before the Board and its June 29, 1971 order.

The initial issue to be resolved is whether the State Board of Registration for the Healing Arts was authorized to conduct its hearing on June 26, 1971 for the purpose of determining whether or not appellant had violated any of his conditions of probation and, if so, the consequences thereof.

Sections 161.252 through 161.342 were passed to create an impartial tribunal to hold evidentiary hearings and to make findings of fact and conclusions of law upon the evidence presented by the licensing board on the one side and by the licensee or applicant for a license on the other in all cases where a license issued by any of the agencies listed in § 161.272 may be affected or where licensure thereby is refused. State ex rel. American Institute of Marketing Systems, Inc., et al. v. Missouri Real Estate Commission, 461 S.W.2d 902 (Mo.App.1970). Under § 161.272, the Commission is directed to conduct eviden-

tiary hearings and to find and decide the issue whether or not there is cause, as charged by complaint, to revoke or suspend a license issued by the Board or to place its licensee on probation. Since the enactment of this section, the Board is no longer authorized to do so, State ex rel. American Institute of Marketing Systems, Inc., et al. v. Missouri Real Estate Commission, supra, nor may the Board revoke or suspend a license issued by it or place its licensee on probation without a prior, independent evidentiary hearing by the Commission, commenced and conducted pursuant to §§ 161.272 and 161.282, and resulting in the Commission's decision that there is cause to do so, notwithstanding present language to the contrary contained in § 334.100. If the Commission finds there is cause, § 161.292 authorizes the Commission to make only recommendations as to appropriate disciplinary action, which recommendations are not binding on the Board. The Commission is not authorized by § 161.292 to conduct evidentiary hearings upon the issue of the appropriate disciplinary action. However, if the Commission elects to recommend appropriate disciplinary action and if the Board and its licensee both waive the hearing on the issue of appropriate disciplinary measures, then § 161.292 provides that the recommendations of the Commission shall become the disciplinary order of the Board. On the other hand, in any case where the Commission does not make any recommendation for disciplinary action or where it makes such a recommendation but either the Board or its licensee or both do not waive a hearing on the issue of the appropriate disciplinary action, § 161.292 authorizes only the Board to conduct an evidentiary hearing on the issue of appropriate disciplinary action. Thus it is clear that §§ 161.252 and 161.-292 provide that only the Commission is authorized to conduct an evidentiary hearing upon the issue of whether or not there is cause to revoke or suspend a license or to place a licensee on probation and that only the Board is authorized to conduct an evidentiary hearing upon the issue of appro-

priate disciplinary action. It is equally clear that in this case, the Board was authorized to conduct the evidentiary hearing June 26, 1971 to determine the issue of whether appellant violated conditions of his probation granted by the Board's disciplinary order dated January 23, 1970 and, if so, the consequences. After the prior and separate independent finding of cause by the Commission, the Board conducted a hearing on the issue of appropriate disciplinary action on January 17, 1970 in accordance with § 161.292 and the disciplinary order of the Board dated January 23, 1970 followed. The Board was authorized to determine appropriate disciplinary action; revocation of appellant's license and placing appellant on probation are disciplinary measures authorized by § 334.100; and the Board, not the Commission, is authorized to determine the substantive issue of whether or not appellant has violated any condition or conditions of his probation as an inherent extension of its statutory authority and duty under § 161.292.

In its findings of fact, conclusions of law and decision dated December 21, 1971, which are reviewed here, following its hearing on October 18, 1971 in its Cause No. 71019, the Commission correctly concluded that it did not and does not have authority to determine the substantive issue of whether appellant violated conditions of his probation, but concluded that it is and was authorized by § 161.302 to determine "whether the Board followed proper *procedure* in guaranteeing Doctor Masters a full and fair evidentiary hearing before terminating his license to practice medicine." The Commission concluded, in effect, that § 161.302 empowered the Commission to administratively review the manner in which the Board conducted a hearing which the Board was clearly authorized by statute to conduct for the purpose of deciding whether the Board and its hearing procedures provided appellant due process of law. The Commission's October 18, 1971 hearing consisted of no more than a review of the June 26, 1971 probation revo-

cation hearing before the Board and not a new, separate evidentiary hearing on the same subject.

Being a creature of statute, the Administrative Hearing Commission has no more and no less authority than that granted it by the legislature in its laws creating and establishing the Commission. §§ 161.-252 through 161.342. The Administrative Hearing Commission is authorized and directed by § 161.272 to conduct hearings and make findings of fact and conclusions of law in two classes of cases. The first kind being where, under the law, a license issued by one of the agencies names in § 161.272 (or any future new or additional administrative agencies having the power to issue, revoke, suspend or place licensees thereof on probation) may be revoked or suspended or where a licensee thereof may be placed on probation. Such a hearing is had upon written complaint filed under § 161.282 by the agency granting the license or by the attorney general. Upon the evidence presented by the complainant and the licensee, the Commission decides only whether or not there is cause to do so. The second class of case under § 161.272 is where such an agency refuses to permit an applicant to be examined upon his qualifications or refuses to issue or renew a license of an applicant who has passed an examination for licensure or who possesses the qualifications for licensure without examination, and is heard upon complaint filed by any such applicant under § 161.-302. Upon the evidence presented, the Commission decides only whether or not under the law the applicant is entitled to examination or licensure or licensure or renewal and is directed to issue an appropriate order or decision accordingly.

Upon delivering or transmitting its findings of fact, conclusions of law and decision and order, as the case may be, the Administrative Hearing Commission has exhausted all jurisdiction, authority and power granted it under §§ 161.252 through 161.342 in either of such two classes of cas-

es. No further jurisdiction or authority is granted the Commission by the Administrative Hearing Commission Act to *review* any hearing conducted by any agency authorized by the Act or procedures followed or employed in connection therewith. By virtue of Art. V § 22 Mo. Const., implemented by §§ 161.332 and 536.100 et seq., only a circuit court or court of common pleas of the county of proper venue have jurisdiction and authority to *review* a decision or order of an administrative agency falling under the purview of the Administrative Hearing Commission Act, or a decision of the Administrative Hearing Commission itself, or the manner in which either such an agency or the Commission conduct a hearing. The Administrative Hearing Commission is without jurisdiction or authority to *review* any hearing conducted, procedure followed, action taken or order made by the State Board of Registration for the Healing Arts or of any of the agencies included in § 161.272 and was without authority to make its decision and order upon such a review as was done in this case on December 21, 1971.

The Commission also concluded and appellant urges here that the Commission had jurisdiction under § 161.302 to conduct its hearing on October 18, 1971 in Cause No. 71019 on appellant's complaint and to review the procedures followed and action taken by the Board on June 26, 1971 and June 29, 1971 in Cause No. 68019 on the theory that when the Board refused to accept appellant's statutory fee and issue him a certificate of registration for the fiscal year July 1, 1971 through June 30, 1972, the Board had refused to renew appellant's license, a cause for complaint by a licensee under § 161.302. The facts of this case and the licensure and registration provisions of Chapter 334, RSMo do not support this contention. With the exception of a temporary license issued in accordance with § 334.045, there is no provision in §§ 334.010 through 334.260 authorizing or directing the Board to *renew* a license once issued in accordance with those sections, annually or at any other time. The annual registration required by §§ 334.070 through 334.090 is not a renewal of a license issued by the Board. As an additional condition to the lawful practice of medicine and surgery in this state, a licensee is required to apply to the Board for a certificate of registration on or before June 30 each year. § 334.080. The annual registration of licensees required by §§ 334.070 through 334.090 is the means by which the expenses of maintaining the Board and enforcing the provisions of Chapter 334 are financed and by which the Board is kept advised of the identification and addresses of its licensees and their licenses.

In a sense, the annual registration required for the ensuing year might be considered as an application for a renewal of the certificate of registration previously issued for the year ending. Sections 334.070 through 334.090 require the Board's licensee to register annually and direct the Board to issue its annual certificates of registration upon receipt of its licensee's application for registration on the form provided by the Board, evidence of his licensure and the statutory fee. The particular duty these sections impose upon the Board is ministerial and not discretionary. The Board may not refuse to issue its annual certificate of registration to its licensee on the ground that it believes there is cause to revoke or suspend a license it has issued or to place its licensee on probation. Instead, it must file a written complaint accordingly with the Administrative Hearing Commission pursuant to § 161.282. Upon refusal by the Board to issue its annual certificate of registration submitted in accordance with §§ 334.070 through 334.090, its licensee may either file a complaint under § 161.302, State ex rel. American Institute of Marketing Systems, Inc. v. Missouri Real Estate Commission, supra, or seek mandamus. § 529.010 et seq.; Rule 94.01, et seq.; State ex rel. Floyd v. Philpot, 364 Mo. 735, 266 S.W.2d 704 (banc 1954).

The Board's refusal to issue appellant an annual certificate of registration in this case was not tantamount to its refusal to *renew* appellant's *license* as would give the Commission jurisdiction and authority to proceed under § 161.302, as it and appellant suggest. As a condition for the issuance of an annual certificate of registration, a licensee must submit evidence to the Board that he is licensed to practice medicine in this state. § 334.-070(1). A person who is not licensed to practice medicine in this state may not be issued an annual certificate of registration. In this case, appellant's license was revoked by the June 29, 1971 order of the Board terminating his probation and reinstating its original order of revocation. Appellant was not a licensee of the Board on and after that date and the Board could not have thereafter lawfully issued a certificate of registration to appellant.

Appellant also urges that the Commission, rather than the Board had jurisdiction to conduct an evidentiary hearing under § 161.272 because the subject matter of the Board's June 26, 1971 hearing involved new factual circumstances arising after the initial order of revocation and probation. While the ultimate result of an affirmative finding that appellant had violated conditions of his probation could be revocation of appellant's license, the possibility of that result and the fact that such a possible result arose out of new factual circumstances did not confer jurisdiction upon the Commission to conduct an evidentiary hearing thereon or to make a decision or order thereon. This is because appellant's license had already been revoked and appellant had already been placed on probation upon suspension of execution of the order of revocation for the five year probationary period. The issue to be determined at the June 26, 1971 probation revocation hearing was simply and solely whether or not appellant had violated conditions of his probation as charged, not whether there was new cause to revoke or suspend appellant's license or place appellant on probation. It was not necessary to find that appellant had engaged in conduct that would be sufficient cause to revoke or suspend appellant's license or to place appellant on probation in order to find that appellant had violated a condition or conditions of his probation. Conduct which violates a condition or conditions of probation may or may not be sufficient cause to revoke or suspend a license or place a licensee on probation, but that question is irrelevant to the issues to be resolved at this kind of probation revocation hearing. The only questions are: Did the licensee engage in the conduct alleged, and if so, did such conduct violate a condition or conditions of his probation? For the reasons we have shown, this was a matter for determination by the Board and within the jurisdiction granted it by § 161.292 and this point must be ruled against appellant.

The Commission found, and appellant urges here, that the Board denied appellant due process of law in the course of its June 26, 1971 probation revocation hearing in that appellant "was not given an opportunity to have an attorney present to safeguard his interests and to cross-examine (the) Board's witnesses and was not given an opportunity to call witnesses in his own behalf."

This court recognizes that appellant's license to practice medicine is such an interest that if the state, by one of its agencies, seeks to affect or terminate that interest, it must afford proper notice, which includes sufficient facts to adequately inform its licensee of the charges made in order that its licensee may prepare to answer or defend such charges, and opportunity for hearing appropriate to the nature of the case before terminating such an interest, whether it be denominated a right, a privilege or an entitlement. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.

2d 90 (1971); and see State ex rel. Baepler v. State Board of Health of Missouri, 330 Mo. 943, 52 S.W.2d 743 (Mo.1932). It is also true that where such an interest may be affected or terminated by one of the state's administrative agencies, due process requires that a grantee of such an interest be afforded an opportunity to have counsel present at an administrative hearing conducted for the purpose of determining whether such an interest should be affected or terminated. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). These standards must be met whether such an interest is sought to be affected or terminated by a proceeding initiated under § 161.282 or because of alleged violation of conditions of probation imposed and accepted as a result of proceedings had under §§ 161.282 and 161.292.

Counsel for appellant and respondent have suggested standards contained in various decisions concerning criminal cases in support of their conflicting contentions on this point and other points raised here. Although we have studied those cases with interest, we decline the parties' invitation to compare and apply those standards properly applicable to felony cases to a matter of this kind. The purpose of § 334.100 is the protection of the public in safeguarding public health. Hughes v. State Board of Health, 348 Mo. 1236, 159 S.W.2d 277 (1942). Proceedings conducted in accordance with §§ 161.272, 161.282 and 161.292, and for the purpose § 334.100 manifests, are not penal in nature, are not "quasi-criminal" and do not contemplate "punitive" sanctions. The licensee is not tried thereunder for any criminal offense. Younge v. State Board of Registration for the Healing Arts, 451 S.W.2d 346, 349 [3] (Mo.1969); Bridges v. State Board of Registration for Healing Arts, supra, l. c. 419 S.W.2d 281 [5–7]. Procedural rules that may satisfy due process in one context may not reasonably satisfy procedural due process in every case. Thus, procedures adequate to determine an administrative

agency claim may not be sufficient to try a felony charge. Bell v. Burson, supra.

 In this case, appellant was properly notified of the original hearings conducted by the Commission and the Board on December 8, 1969 and January 17, 1970, respectively, and was represented by counsel at both such hearings. (We note that his counsel here did not represent him at those two hearings.) On or about June 3, 1971, the Board issued and appellant received written notice that the Board charged that on or about July 12, 1970, at Senath, Dunklin County, Missouri, the defendant unlawfully sold one Leon Phillips 180 amphetamine capsules without legitimate medical need therefor and after having been advised that the capsules were being purchased by said Leon Phillips for resale, that such conduct was in violation of conditions of his probation and advised appellant of his right to appear before the Board on June 26, 1971 to show cause why the probation theretofore granted should not be withdrawn and the order of revocation theretofore stayed should not be executed. It is obvious, that appellant was given timely and proper notice of the hearing, its purpose and sufficient facts of the charges to enable appellant to prepare to answer and defend those charges. The notice itself informed appellant who might be expected to, and did, testify at the hearing and the nature of his testimony and the evidence. The transcript of that hearing had on June 26, 1971 clearly reflects that appellant knew what the purpose of the hearing was and what the basic facts of the Board's charges were. He brought to the hearing his record of his interview and examination of Phillips, his record of Mrs. Phillips, whom he admittedly never saw or examined, the bottles from which he removed the pills and capsules he sold to Phillips and samples of the drugs themselves. The transcript of that hearing further clearly reflects that appellant informed the Board that he was acting as his own attorney, that he had an attorney, that

he tried to call that attorney the night before and the morning of the hearing and that he was giving testimony against his attorney's advice. Appellant did not request or attempt to obtain a recess or continuance of the hearing. Under these facts, it is clear that appellant was given ample opportunity by law and in fact to have counsel present at the hearing, that neither the Board nor the procedure it followed in conducting the hearing denied appellant the opportunity to have an attorney present and that the fact that appellant did not have an attorney present at the hearing was the result of his own independent judgment, decision and act or omission. It was appellant's own failure or decision not to exercise his right and opportunity to have counsel present that caused his lack of representation. We further note that in appellant's motion for rehearing and for leave to present additional evidence filed on or after June 29, 1971 he alleges under oath that he did not employ counsel to assist him in this matter because he knew no wrong had been committed but did not know that testimony he alleged to be untrue would be offered or be given at the hearing. We hold that the Commission was in error in its conclusion that the Board denied appellant the opportunity to have counsel present.

▮ The transcript of the June 26, 1971 hearing reveals that at the conclusion of Leon Phillips' testimony, appellant stated, "I have other witnesses here who will repudiate this man's testimony." Immediately following this statement, which was included in an explanation and challenge of Phillips' testimony, appellant was sworn and testified in his own behalf. At the conclusion of his testimony, it appears that the Board went into an "executive session". Following the recess, appellant was asked if he had anything new or further points to bring up at that time. It does not appear that appellant made any attempt to offer the testimony or evidence of any

"other witnesses" if they were in fact present or that he made any attempt to request or obtain a recess or continuance of the hearing to obtain this testimony or evidence if he meant by his statement that "other witnesses" were available but not present. It does not appear that if appellant's witnesses were not present, any reason was given for their absence or that their absence was through no fault of appellant or that they could and would appear at some other time. Appellant abandoned the subject matter of "other witnesses" at the hearing after having made the statement. In effect, appellant waived his right to call witnesses when provided an opportunity to do so. Under the facts of record in this case, we hold that the Board did not deny appellant due process in failing to recess or continue the hearing, sua sponte, and that it cannot be found to have abused its discretion by refusing a continuance where none was requested during or at the conclusion of the hearing.

It is true that on or after June 29, 1971, appellant filed a motion for rehearing and for leave to present additional evidence in Case No. 68019. The Board's secretary advised defendant that the Board had no authority to entertain such a motion but that he would place the motion before the Board at its next meeting. No action appears to have been taken on the motion by the Board. It is not necessary here to determine whether the Board does have such authority. We hold that under these facts the appellant was not denied the opportunity to call witnesses in his own behalf at the hearing and that the Commission was in error in holding to the contrary. Again, it was appellant's failure or decision not to exercise his right to have any "other witnesses" present at the hearing or to offer their testimony in his defense or in explanation of the charges after having had timely and proper notice of the hearing which caused the absence of "other witnesses", and not in any act or omission on the part of the Board.

In considering appellant's claim that he was denied an opportunity to be represented and call witnesses, we believe that opportunity not taken when given is not opportunity denied.

■ Although appellant does not question the sufficiency of the evidence upon which the Board entered its June 29, 1971 order, we have examined this because of the consequence of the order and because of other circumstances previously referred to. There was competent and substantial evidence upon which the Board could reasonably have found that Phillips, in his stated capacity, had received evidence that appellant was selling amphetamines for non-medical use and contacted appellant for the purpose of attempting to obtain drugs from appellant for such use; that he advised appellant and appellant was aware that his purported purpose for obtaining the drugs was for sale and not for any legitimate medical need or reason therefor; that pursuant to the purported purpose, appellant prescribed and sold drugs to Phillips and prescribed and sold drugs to Phillips ostensibly for Phillips' wife, whom appellant never saw nor examined but whom appellant found to be in need thereof; that by his own admission, the drugs appellant prescribed and sold to Phillips contained amphetamine and that under all these facts and circumstances, appellant violated conditions of his probation. We do not find that the June 29, 1971 decision and order of the Board was against the overwhelming weight of the evidence and, therefore, affirm. Compare Rose v. State Board of Registration for Healing Arts, 397 S.W.2d 570 (Mo.1965).

The judgment is affirmed for the reasons we have stated here; and the June 29, 1971 order of the Board terminating appellant's probation and reinstating its order revoking appellant's license is affirmed.

All concur.