

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| RUQAIYAH HUNTER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD87311 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | April 29, 2025 |
| DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division One:** Karen King Mitchell, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer, Judges

Ms. Ruqaiyah Hunter ("Employee") appeals the decision of the Labor and

Industrial Relations Commission ("Commission"), which affirmed the decision of the

Division of Employment Security's ("Division") Appeals Tribunal that determined

Transimpex Translators Interpreters Editors Consultants, Inc. ("Employer"), had good

cause to file an untimely protest against Employee's claim for unemployment benefits,

reversing the contrary initial determination by a Division deputy. We dismiss the appeal.

To receive unemployment benefits from the Division, a claimant must first file a claim with the Division. § 288.070.1.[1] When a claimant files for unemployment benefits with the Division, the Division must provide notice of the claim to the claimant's last employer and to any employer who paid the claimant more than four hundred dollars during the base period for measuring the claimant's unemployment benefits. *Id.* An employer entitled to notice may file a written protest against the claim within ten calendar days of the notice's mailing date. *Id.* If the employer files a protest within the ten-day period, it will become an interested party to the claim. *Id.*

A deputy within the Division is then responsible for reaching an initial determination on the claim for unemployment benefits. § 288.070.4. This initial determination becomes final within thirty days after it is mailed—unless the claimant or an interested party files an appeal. § 288.070.6.

Employee separated from employment with Employer on November 9, 2023. She then submitted her application for unemployment benefits on November 12, 2023. On November 15, the Division mailed Employer notification that Employee had filed a claim for unemployment benefits, commencing the ten-day period to file a written protest. Employer did not file a protest during this period. On January 25, 2024, Employer received notification of charges for unemployment benefits that had been paid to Employee. Employer transmitted its written protest of Employee's claim the next day, which argued that Employee lacked good cause to separate from Employer.

---

[1] All statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through June 6, 2024, unless otherwise indicated.

On March 21, 2024, a deputy from the Division reviewed and rejected Employer's protest without taking evidence, determining the protest to be untimely. On April 9, 2024, Employer appealed to the Division's Appeals Tribunal, arguing that it had good cause to file an untimely protest because it had not received the November 15 notice and had promptly filed its protest upon receipt of the charges for Employee's unemployment benefits.

The Appeals Tribunal held an evidentiary hearing, where Employer's president testified to issues regarding the mail. In its subsequent decision on May 6, 2024, the Appeals Tribunal acknowledged that Employer's protest was untimely. However, it determined that Employer had presented sufficient evidence at the hearing to demonstrate that Employer had not received the November 15 notice and that Employer had acted reasonably and in good faith by filing a protest upon receiving the January 25 bill of charges. Finding this lack of notice to be good cause justifying an untimely protest, the Appeals Tribunal concluded that Employer was an interested party and ordered the matter to be remanded to process Employer's protest.

On May 10, 2024, Employee timely appealed the Appeals Tribunal's decision to the Commission, arguing that the Appeals Tribunal lacked sufficient evidence to conclude that Employer did not receive the November 15 notice and asserting that Employer should have acted with greater care in checking its mail. On June 6, 2024, the Commission summarily affirmed the Appeals Tribunal's decision and adopted the entirety of its decision.

However, on May 24, 2024, *while Employee's appeal to the Commission was still pending*, a deputy from the Division announced a *second* determination on Employee's claim—finding that Employee voluntarily separated from Employer without good cause and, accordingly, denied all unemployment benefits both prospectively and retrospectively.[2]

On June 22, 2024, Employee provided the Commission notice of her intent to appeal the Commission's June 6 decision by faxing the form designated for appeals from

_____

[2] Section 288.247.3 authorizes the deputy to investigate issues raised by an employer's protest *when the protest is timely*: "[A]ny issue raised by an employer in a timely protest and any issue of fraud under section 288.380 shall be decided by a deputy of the division after investigation." Due to the continuous series of timely appeals, there has yet to be a *final* determination on whether Employer's protest was timely *before* the deputy reversed its initial determination that the Employer's protest was *untimely*. *See* § 288.070.5 ("A determination shall be final, when unappealed, in respect to any claim to which it applies . . . ."); § 288.190.4 ("*In the absence of the filing of an application for review* of [the appeal tribunal's] decision, the decision, whether it results in a reassessment or otherwise, shall become final thirty days after the date of notification or mailing thereof . . . .") (emphasis added).

Without a final determination on this issue, the deputy lacked authority to investigate the issue raised in Employer's protest or to consider the protest at the time it issued the May 24 decision reversing the deputy's initial determination. Thus, the deputy lacked authority to consider the assertion within Employer's protest that Employee lacked good cause to separate from employment and its May 24 decision is, thus, void. *See Covert v. Dir. of Mo. Dep't of Soc. Servs.*, 655 S.W.3d 596, 603 (Mo. App. E.D. 2022) (alteration in original) (quoting *State ex rel. Ryan v. Ryan*, 124 S.W.3d 512, 516 (Mo. App. S.D. 2004)) ("[A]cts taken by an administrative agency that exceed authority . . . are void *ab initio*."); *Cantrell v. State Bd. of Registration for Healing Arts*, 26 S.W.3d 824, 828 (Mo. App. W.D. 2000) (citing *Cohen v. Mo. Bd. of Pharmacy*, 967 S.W.2d 243, 248-49 (Mo. App. W.D. 1998)) ("When an administrative agency usurps its authority, its unlawful act is void."); *cf. Farmer v. Barlow Truck Lines, Inc.*, 979 S.W.2d 169, 170 (Mo. banc 1998) (citing *Bodenhausen v. Mo. Bd. of Registration for Healing Arts*, 900 S.W.2d 621 (Mo. banc 1995); *Soars v. Soars-Lovelace, Inc.*, 142 S.W.2d 866, 871 (Mo. 1940)) ("A cardinal principle of all administrative law cases is that an administrative tribunal is a creature of statute and exercises only that authority invested by legislative enactment.").

the Commission to this Court. On the cover sheet of the fax, Employee wrote the appeal number associated with the Commission's decision. However, Employee's documents attached to the appeal form included a copy of both the Commission's decision and the Division deputy's May 24 decision. The documents also included a letter which stated, "I am writing this letter to appeal the decision made that I voluntarily quit my position and did not give my employer the chance to discuss the issue causing me to resign my position," referencing the content of the Division deputy's May 24 decision, not the Commission's June 6 decision. The Commission forwarded Employee's appeal to this Court.[3]

In her brief before this Court, Employee raises one point on appeal. In this sole point on appeal, Employee argues the "denial of her claim for unemployment benefits" was improper because she had good cause to separate from her employer and because the Division did not provide her an opportunity to submit evidence supporting her claim of good cause to separate. Furthermore, the entirety of the argument section within her initial brief addresses the issue of her good cause to separate from Employer; it does not address the issue of whether Employer had good cause to file an untimely protest. Because Appellant has failed to address the sole legal issue considered by the

---

[3] For reasons identified in an earlier footnote of today's ruling, we sympathize with Employee's confusion and find her actions in attempting to preserve her right of appeal on *both* the Commission's June 6 decision *and* the Division deputy's May 24 decision to be logical and reasonable under the circumstances—especially for a self-represented non-lawyer litigant. We expect the Division to discuss today's ruling with its deputies so that the Division does not unnecessarily complicate proceedings for claimants such as Employee in the future.

Commission in its June 6 decision, we must deem her appeal abandoned.[4] *See Medley v.*

*Div. of Emp. Sec.*, 419 S.W.3d 911, 914 (Mo. App. W.D. 2014) (quoting *Rainey v. SSPS,*

*Inc.*, 259 S.W.3d 603, 606 (Mo. App. W.D. 2008)) ("Because [Employee] does not

challenge the basis upon which the Commission actually ruled against [her], we [are]

constrained to dismiss [her] appeal . . . ."); *Hauenstein v. Houlihan's Rests., Inc.*, 381

S.W.3d 380, 381-82 (Mo. App. E.D. 2012) (mem.) ("If a claimant does not address on

---

[4] Employee does attempt to raise the issue of Employer's good cause to file an untimely protest in her reply brief, but because it was not raised in her initial brief, it is not preserved for our review. *See Knopke v. Knopke*, 837 S.W.2d 907, 923 (Mo. App. W.D. 1992) ("[A]rguments omitted from an appellant's initial brief may not be supplied by a reply brief, when the respondent has no chance to reply."); *Page v. Metro. St. Louis Sewer Dist.*, 377 S.W.2d 348, 354 (Mo. 1964). In her reply brief, Employee argues the Commission's decision was not supported by substantial evidence because the Commission credited Employer's testimony without any other supporting evidence.
Even reviewing Employee's unpreserved argument, *ex gratia*, *see Courtright v. O'Reilly Auto.*, 604 S.W.3d 694, 706 (Mo. App. W.D. 2020) ("This Court has discretionary authority to review an unpreserved issue . . . ."), it would have failed. "The findings of the commission as to facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive . . . ." § 288.210. Therefore, "we give deference to the Commission's factual findings as to witness credibility and conflicting evidence . . . ." *Miller v. Div. of Emp. Sec.*, 670 S.W.3d 444, 449 (Mo. App. W.D. 2023); *accord Wooden v. Div. of Emp. Sec.*, 364 S.W.3d 750, 754 (Mo. App. W.D. 2012) (acknowledging that the Commission's credibility judgments were binding on appeal). The Commission, in adopting the decision of the Appeals Tribunal, credited Employer's testimony that it did not receive the mailed notice. *Ashford v. Div. of Emp. Sec.*, 355 S.W.3d 538, 540 (Mo. App. W.D. 2011) ("When, as here, the Commission adopts the decision of the Appeals Tribunal, we consider the Tribunal's decision to be the Commission's for purposes of our review."). Thus, the Commission's decision was supported by competent and substantial evidence—Employer's credible testimony. *See Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223-24 (Mo. banc 2003) ("A claimant's credible testimony . . . can constitute competent and substantial evidence."); *Harper v. Springfield Rehab & Health Care Ctr.*, 687 S.W.3d 613, 619 (Mo. banc 2023). We recognize that Employee testified at the hearing and continues to argue on this appeal that she did not find Employer's testimony credible for a number of reasons; however, the Commission's finding that Employer's testimony was credible is conclusive and binding on this Court.

appeal the issues decided by the Commission, then the claimant is deemed to have abandoned the appeal.").

Employee's appeal is dismissed. Given our dismissal of Employee's appeal, the administrative determination that Employer had good cause for its untimely protest is now final. The remand ordered by the Appeals Tribunal can now occur, and the Division may make a determination on the merits of Employer's claim that Hunter lacked good cause for voluntarily terminating her employment.

_____
Mark D. Pfeiffer, Judge

Karen King Mitchell, Presiding Judge, and Lisa White Hardwick, Judge, concur.